## Giles Pease *vs.* John N. Brown & others.
## John N. Brown & others *vs.* Giles Pease.

A and B. agreed in writing, concerning a tract of land belonging to A., which was occupied by squatters, as follows: that if the claims of the squatters could be extinguished by compromise for a reasonable sum, A. should extinguish them within sixty days after B. should pay him $5000, but if it should be impracticable to settle with the squatters on reasonable terms, A. should eject them by legal process, and in such case B. should pay him such sums as might be needed for the purpose, not exceeding in all $2000, and further, if A. should find that he could effect a settlement with them, and should wish for said $5000, or any part thereof, for that purpose, B. should pay him said $5000, or such part thereof as he might desire, within thirty days after notice from him; that A. should convey the tract to B. when B. should finish paying him $50,000, including the $5000; but that B. should not incur any personal liability for payment of the $50,000, or any part thereof "except the aforesaid $5000 or the aforesaid $2000 as the case may be." A.

Pease *v.* Brown.

thereupon proceeded to compromise with some of the squatters: and paid C., one of them, $800 for a release of his claim in the tract, and as part of the bargain agreed to purchase from him for $1000 a lot of land outside of the tract. Then, having effected no final settlement with the squatters, he made a supplemental written agreement with B., modifying the terms of sale of the tract in certain particulars not relating in any material clause to the squatters, and concluding thus: " This modification of the agreement is made with the understanding that B. is to pay A. $1500 on said contract within sixty days hereof, according to the terms of his promissory note of even date herewith, and also the further sum of $1000, if A. shall require, within sixty days from this date, for the purpose of settling with said squatters, provided A. shall give him thirty days' notice of his requiring the same. If such payment or payments shall not be so made, this modification is to be void." *Held*, 1. that B. did not agree to pay A. $5000 absolutely, but only such part thereof as A. should desire and need to effect a settlement with the squatters; 2. that the $1500, paid by B. on his promissory note of even date with the modification of the original agreement, was not paid as the consideration of said modification, but to be applied by A. towards the $5000 or such part of the $5000 as was needed to settle with the squatters; 3. that A. could not charge against the $5000 the sum which he promised to pay C for land outside of the tract; and 4. that any part of the $5000 which B. paid A. in consequence of A.'s representations that he needed it to settle with the squatters, but which in fact was not needed or used for that purpose, could not, without B.'s consent, be retained by A. and applied as a part payment of the contract price of the tract.

B., having agreed with A. to buy a tract of mining land, belonging to A. but occupied by squatters, and to pay A. so much, not exceeding a certain amount, as should be needful to settle the squatters' claims, and having paid sums to A. on account of this amount, and incurred other expenses relating to the land, sued A. in tort for deceit, and alleged that A. obtained the agreement from him by false statements of the value and minerals of the tract; that said sums were paid under and in consequence of the agreement thus obtained, and because A. assured him that they were needed and to be used to settle the squatters' claims, when in fact they were neither so needed nor used, but misappropriated by A. to his own use; and that in consequence of said misrepresentations the other expenses were incurred; and he joined a count in contract, alleged to be for the same cause of action, which set forth the agreement and his payment of said sums to A. under it, alleged that he paid them in consequence of the false representations and statements set forth in the first count, and sought to recover them as money had and received by the defendant to the plaintiff's use. At the trial, B. gave notice that he did not seek to recover anything from A. by reason of any alleged statements of A. touching the value or minerals of the land. *Held*, that, after striking out all such allegations, either count still set forth a good cause of action.

On the trial of an action on counts in tort for deceit, and contract for money had and received, to recover sums paid under an agreement of the plaintiff to pay them to the defendant to be applied by him to a certain purpose if he should need and desire them for it, facts agreed showed that the whole amount of them was not needed or used by the defendant for that purpose, and the plaintiff testified that he paid them because the defendant represented to him that they were needed for it. In relation to one of the sums, the defendant requested a ruling that it could not be recovered if the jury should find that the parties believed that it was paid with the impression, created by the phraseology of the contract or otherwise, that it was not to be applied to that purpose; and on the whole case, he requested a ruling that there was no evidence to sustain the action. The judge refused the second request; declined to rule in the terms of the first request; and submitted the case to the jury with instructions which required them to find, in order to return a verdict for the plaintiff, that the payments made by him were made for the

purpose named, and that he was induced to make them by false representations of the defendant that they were needed for it. *Held*, that the defendant had no ground of exception.

On the issue between A. and B., whether B. was induced to pay A. money by false representations of A. that it was needed for a certain purpose, if A. contends that B., when he made the payment, did not understand that the money was to be used for that purpose but for another purpose, it is competent for B. to testify that he paid the money supposing that it was to be applied to the first purpose.

THE FIRST CASE was an action of contract against John N Brown, Abiel Abbott, John S. Abbott and William A. Abbott. Writ dated September 18, 1868. The first count of the declaration alleged that the plaintiff, on July 15, 1863, (and ever since,) owned a tract of four hundred and seventy acres of land in West Virginia, which was then subject to claims of so called squatters, and on that day entered into an agreement under seal with the defendants, which, after reciting his ownership of the land and the existence of such claims, contained stipulations, of which the parts material to this case were as follows, the paragraph first quoted being the third paragraph thereof:

" Said Pease hereby agrees with said Brown and others, that he will extinguish the claims of said squatters, by compromise with them, if the same can be done for a reasonable sum, and cause them to remove from the premises above described, within sixty days after Brown and others shall have paid to him the sum of $5000.

" If it shall be found by Pease impracticable to effect a settlement with said squatters on reasonable terms, instead of being required to make such settlement he is to resort to proper legal measures to relieve the real estate of them and their claims. And in such case Brown and others shall pay to Pease from time to time, within thirty days after request, such sums as may be needed for said purpose, not exceeding in all $2000, until the claims of said squatters shall be extinguished."

" And further, if Pease shall find he can effect a settlement with said squatters, and shall wish for said $5000, or any part thereof, for that purpose, Brown and others are to pay him said sum of $5000, or such part thereof as he may desire, within thirty days after notice from Pease."

" Said Pease also agrees with said Brown and others, their associates, successors and assigns, that he will convey said real estate to them by good and sufficient deed with usual covenants of warranty." " But Pease is not to be required to execute such deed, until said Brown and others, their associates, successors and assigns, shall have paid to him, his assigns or lega' repre-sentatives, $50,000; the before mentioned $5000 being a part of said $50,000 and of the $9500 mentioned below, and the $50,000 payable as follows : $200 to be paid on July 22, 1863, and $300 on or before December 1, 1863 ; $9500 (which sum includes the before mentioned $5000) on or before December 1, 1864; $10,000 on or before December 1, 1865 ; $10,000 on or before December 1, 1866 ; $10,000 on or before December 1, 1867; and $10,000 on or before December 1, 1868."

" Said Pease hereby authorizes and permits said Brown and others, their associates, successors, assigns and legal representa-tives, to commence the occupation of said real estate at any time after sixty days from this date ; and sooner, if Pease is able sooner to effect a settlement with said squatters; and to make any erections or improvements thereon, and any excava-tions, and to take therefrom and appropriate to their own use any ores, minerals, coal and other substances, in or on said real estate ; but in case said Brown and others shall attempt posses-sion before such settlement with said squatters, Pease is not to be made liable for any claims of said squatters on account of the acts and doings of said Brown and others, their associates, successors and assigns, while he is effecting the extinguishment of their claims in manner before described. But such occupa-tion is not to continue, except upon the condition that the afore-said payments, amounting to $50,000, shall be promptly made in the manner before described. And in case there should be a failure to make any of said payments, all the erections and im-provements upon said real estate, which shall then have been made, shall be forfeited, and shall become the property of Pease, his heirs or legal representatives.

" Said Brown and others are to make reasonable efforts in such way as they may deem judicious, for the purpose of devel-

oping, working, and bringing before the public and into market, the minerals and ores on said real estate; but they do not incur any personal liabilities for the payment of the said $50,000, or any part thereof except the aforesaid $5000, or the aforesaid $2000, as the case may be, and the aforesaid $500. But the security for the payment of all sums, except as aforesaid, is upon the property itself, and upon the improvements which may be made thereon, as before described."

" If no settlement should be effected with the squatters, and no arrangements made by which said Brown and others can commence the occupation of said estate for the purposes and in manner aforesaid, peaceably and without danger of collision and trouble, within sixty days from this date, then, and in such case, all payments named and specified in this indenture, except such as shall then have been made, are to be deferred beyond the time when they would be otherwise payable, just as long as said Brown and others shall be delayed occupancy beyond said sixty days."

" And it is further agreed, that if, from unforeseen causes, said Brown and others, their associates and assigns, should fail to make any of the payments mentioned in this indenture, excepting always the before mentioned $500, and the $2000 or the $5000, as the case may be, there is to be no forfeiture nor loss of right to occupy, if any such payment should be made within sixty days from the time when the same shall be payable."

The count further alleged that the plaintiff extinguished the claims of the squatters, and did everything on his part required by the terms of the agreement to be done before the full contract price of $50,000 should be paid by the defendants; that he " did find that he could effect a settlement with said squatters, and did wish for the said $5000 mentioned in said agreement, for the purpose of effecting such settlements and the expenses necessarily incident thereto, and thereupon gave notice to the defendants of his wish for said $5000, and demanded the same; yet the defendants, although the thirty days after such notice and demand have long since elapsed, and the first day of December 1864, when the defendants promised absolutely by

said contract to pay the plaintiff the said sum of $5000, has long since elapsed, have neglected to do and perform on their part everything whatever in said agreement agreed to be done and performed on their part, and have never paid the whole of said $5000, but only a portion thereof, to wit, $2442.85;" and that the defendants owed the plaintiff the balance of the $5000, with interest from and after such notice and demand.

The answer admitted the making of the agreement, but denied all liability of the defendants to the plaintiff thereon, for the reason that they were induced by him to enter into it by means of false and fraudulent representations; alleged that he utterly failed to do the things in the agreement stipulated to be done by him in relation to extinguishing the claims of squatters; further alleged that on his request, and for the purpose pretended by him that he needed certain moneys to enable him to extinguish such claims, they paid him moneys more than sufficient to extinguish all such claims, and more than he in fact paid or was called upon to pay to extinguish them, and he misappropriated the moneys to his own use; and denied all the allegations in the declaration, except such as were expressly admitted.

At the trial in the superior court, before *Reed,* J., the parties agreed that the defendants paid the plaintiff $200 on July 22, 1863, $1000 on September 26, 1863, and $242.85 upon an acceptance of Abiel Abbott in his favor on or before January 2, 1864, and on January 16, 1864, gave him their promissory note for $1500 payable in sixty days, and paid it at maturity, making a total of payments from them to him of $2942.85; and it was proved that, on or about August 10, 1863, he paid William Waggy, one of the squatters, $800, in extinguishment of all his claims, which covered two hundred and thirty-six of the four hundred and seventy acres, and that, on April 26, 1865, he extinguished the claims of William King, another squatter, by paying him $850; and there was no evidence that he paid any other sums to squatters, nor any evidence that there were any other squatters than Waggy and King except by inference from letters of the plaintiff, dated after August 10, 1863, which were put into the case and contained allusions to " the remaining

squatters " and " their claims," and from a supplemental agree-
ment of the parties hereinafter mentioned.  It appeared also
that on June 11, 1864, the plaintiff drew on the defendants for
$1500; that the draft was duly presented to them for accept-
ance, on the same day, with a written request of the plaintiff
that they would accept it "in accordance with the stipulations
of agreement of July 15, 1863," and that they refused to accept
it.  The plaintiff relied on this evidence of his draft and letter
to sustain his allegations of notice and demand.

The plaintiff, in putting in his case, introduced in evidence a
supplemental agreement made under seal between him and the
defendants on January 16, 1864, modifying the agreement of
July 15, 1863, by providing, first, that " Said Abbotts and Brown
are hereby permitted to make a division of the real estate de-
scribed in said agreement into two nearly equal parts, and to
negotiate a sale for either or each of said parts; and in case
they shall succeed in effecting a sale of either or both within
one hundred days from this date, and within that time shall
give to Pease written notice, Pease is to convey by deed of
warranty, within ten days after the receipt of said notice, to
such persons or company as they in said writing may request,
either of said parts, upon payment to Pease of a sum which,
with the payments that have previously been made, shall
amount to $35,000 ; " and secondly, that " Said Pease is to
deed the other part of said real estate to such parties or com-
pany as they may in writing request, in the manner before
stated, provided they shall pay to said Pease, at the time of the
delivery of the deed, a sum, which, with all the other payments
made by them at or before the delivery of said deed, shall amount
to $45,000; payments to be made and deed to be given within
a hundred and twenty days from this date, and upon the same
conditions as to time, notice and place as before stated; and it
is further agreed and understood that if it shall be more con-
venient to said Pease, in making settlement and arrangements
with squatters and abutters, to change somewhat the bound-
aries of said tract, so as to have more river front below the
present survey, and to obtain portions of land adjoining in the

rear, which will work advantageously with the tract possessed, and make more desirable boundaries, he is at liberty so to do." The two final paragraphs of this supplemental agreement were as follows :

" It is also agreed that Pease shall have at least thirty days beyond the sixty days specified in the third paragraph of the original agreement, namely, ninety days, for effecting a settlement with said squatters, after the receipt of the amount specified in said paragraph, if the same shall be necessary.

" This modification of the agreement is made with the understanding that said Abbotts and Brown are to pay to Pease the sum of $1500 on said contract within sixty days hereof, according to the terms of their promissory note of even date herewith, and also the further sum of $1000, if Pease shall require, within sixty days from this date, for the purpose of settling with said squatters, provided Pease shall give to either of said parties thirty days' notice of his requiring the same. Said $1000 is not to be required or paid as above, unless and until Pease shall be requested to give a deed to the northerly part of said tract. If such payment or payments shall not be so made, this modification is to be utterly void and of none effect, and Pease shall have the same rights under the original agreement, and the same claims for breach thereof, against the other parties, as if this modification had not been adopted."

The plaintiff contended that the note for $1500, given to him by the defendants on January 16, 1864, was given as the consideration for this modification of the original agreement, and that " by proper construction of said modification the defendants would be precluded from having any part of said $1500 applied in extinguishment of the so called squatters' claims or moneys paid."

" The judge gave such construction to th ' modification, and ruled in accordance with the above position of the plaintiff; whereupon the defendants offered to prove, by oral testimony, that said $1500 note was given upon the agreement with the plaintiff that the money to be paid thereon should be used in extinguishing the claims of the squatters, and should be taken

as a part of the $5000 named in the original agreement to be expended for that purpose; but the judge ruled that such oral testimony could not be introduced."

At the close of the evidence, the judge refused a request of the defendants for a ruling that it would not sustain the action; and also refused a request of the plaintiff for a ruling that " upon the true legal construction of the agreement of July 15, 1863, he was entitled to recover of the defendants $5000, less the sum which had been paid in part towards said $5000;" and submitted the case to the jury, with instructions that the plaintiff was entitled to recover only so much of the $5000, with interest from the date of the writ, as they should find that he found necessary to settle squatters' claims and demanded of the defendants, in addition to the $2942.85 agreed to have been paid by them to him, less the $1500 paid on their promissory note of January 16, 1864, and less also $500, namely, the $200 paid on July 22, 1863, and $300 more on account of the payment of $300 stipulated in the original agreement to be made by them on or before December 1, 1863. Under these instructions, the jury returned a verdict for the plaintiff for $789.55; and both parties alleged exceptions.

*E. P Brown*, for the plaintiff.

*J. S Abbott*, for the defendants.

MORTON, J. 1. The first question which arises in this case is, as to the construction of the provision in the contract of July 15, 1863, by which the defendants agree that " if Pease shall find he can effect a settlement with said squatters, and shall wish for said $5000, or any part thereof, for that purpose, Brown and others are to pay him said sum of $5000, or such part thereof as he may desire, within thirty days after notice from Pease." We have no doubt that the construction of this clause adopted at the trial in the superior court was correct. It is not an undertaking to pay $5000 absolutely, but only such part of it as the plaintiff desired and needed for the purpose of effecting a settlement with squatters. Provision is made in a subsequent part of the contract for the payment of such part of the $5000 as is not needed to extinguish the claims of squatters. The

contract also contains provisions, by the fair construction of which the defendants were to pay the plaintiff in place of the $5000 a sum not exceeding $2000 for the purpose of ejecting the squatters by legal proceedings, in case the plaintiff found it impracticable to effect a settlement with them; showing that the parties did not understand, as now claimed by the plaintiff, that the $5000 was to be paid absolutely upon his request. The exceptions of the plaintiff therefore cannot be sustained.

2. A question of more difficulty arises upon the construction of the agreement made January 16, 1864. This is a modification of the original agreement, and contains the following provision : " This modification of the agreement is made with the understanding that said Abbotts and Brown are to pay to Pease the sum of $1500 on said contract within sixty days hereof, according to the terms of their promissory note of even date herewith, and also the further sum of $1000, if Pease shall require, within sixty days from this date, for the purpose of settling with said squatters, provided Pease shall give to either of said parties thirty days' notice of his requiring the same." At the trial, the presiding judge ruled that this sum of $1500 was paid as the consideration for said modification, and that it was not to be applied by the plaintiff to the extinguishment of squatters' claims, nor accounted for by him as a part of the said sum of $5000. We are unable to concur in this construction of the agreement. There is nothing in the terms of the modification which indicates that this sum of $1500 was to be received by the plaintiff to his own use, and not as a payment under the contract. It is not stated to be the consideration of the new agreement. On the contrary, the agreement provides that it is to be paid " on said contract." These words necessarily refer to the contract of July 1863 as modified by this agreement. There is no other contract to which they can refer, and we think they are decisive against the construction claimed by the plaintiff. This sum of $1500 thus paid on said contract must be applied towards the sum of $5000, or such part thereof as was needed to settle with the squatters. There is no other payment required by the contract, to which it can apply. We are there-

fore of opinion that the plaintiff is bound to account for this sum as a part of the money paid to him for the purpose of extinguishing the claims of squatters. Upon the evidence at the trial, it appeared that, if he was charged with this sum, he has been more than paid for all sums needed for this purpose, and therefore the court should have instructed the jury, as requested by the defendants, that he was not entitled to recover anything under the first count in his declaration. These views render the other exceptions taken at the trial immaterial.

*Defendants' exceptions sustained.*

At the new trial in the superior court, before *Brigham,* C. J., after this decision, " the only controversy between the parties was, whether the plaintiff could claim, for the purpose of settling with squatters, anything beyond what had already been paid to him for that purpose, which it was agreed was the sum of $2442.85." It was further agreed that the plaintiff had paid $800 to Waggy and $850 to King, and no more; but he contended that he was entitled to be allowed $1000 more, on account of an oral agreement, made between him and Waggy, in their negotiations, for the purchase by him from Waggy, for that sum, of a lot of one hundred acres outside of the tract of four hundred and seventy acres. The other material facts are stated in the opinion. The judge instructed the jury that, " if the consideration of Waggy's relinquishing his squatter's title was $800, that sum was all which the plaintiff could properly call upon the defendants to pay under the contract, notwithstanding Waggy's agreement to extinguish his squatter's title for $800 was coupled with and dependent upon the plaintiff's agreement to purchase other land of Waggy, not included in said tract, for the sum of $1000." The verdict was for the defendants; and the plaintiff alleged exceptions, which were argued in March 1871 by the same counsel.

Morton, J. When this case was before the court at a former term, it was decided that the plaintiff was entitled, under his contract, to demand and receive of the defendants only so much of the $5000 named in the contract as he found necessary for the settlement of squatters' claims.

At this trial, it appeared that the plaintiff had received from the defendants, for the purpose of settling with squatters, the sum of $2442.85, and that he had paid the sum of $1650, namely, $850 to King, and $800 to Waggy. He testified that in August 1863 he settled with Waggy, paid him $800, and received a quitclaim deed of his interest in the four hundred and seventy acre tract described in the contract. He also testified that at the same time, as an inducement to Waggy to give the quitclaim deed, he orally promised to purchase of Waggy a lot of land wholly outside of the four hundred and seventy acre tract, containing a hundred acres, for one thousand dollars, to be paid within a short time. This money has never been paid, and nothing has been " done by the plaintiff or Waggy in carrying this agreement into effect." The only question now before us is, whether the plaintiff is entitled to recover this sum of one thousand dollars.

The presiding judge ruled that upon the evidence the plaintiff was not entitled to recover it, and we are of opinion that this ruling was correct. The plaintiff has not paid the amount, and it does not appear that he is under any legal liability to pay it. But if he is, we do not think he could recover it of the defendants. By the contract, he was made their agent, with authority to settle the claims of squatters, and to call upon them for such sums as he needed for that purpose, not exceeding $5000. They were to pay him such sums as were needed to extinguish the claims of squatters. The contract with Waggy to purchase a distinct parcel of land was not fairly within the scope of his authority, and was not binding on the defendants. There is no hardship in requiring the plaintiff, before he entered into an agreement of this character, not contemplated by his contract with the defendants, to consult with and take the instructions of his principals. Not having done so, and the act being in excess of his authority under the contract, he cannot recover from the defendants the amount he agreed to pay for the land.

*Exceptions overruled.*

THE SECOND CASE was an action of tort, with an alternative count in contract, brought by the defendants in the previous case against the plaintiff therein. Writ dated June 22, 1869. The declaration contained three counts, alleged to be for the same cause of action.

The first count alleged that on July 15, 1863, the parties entered into the written agreement or indenture of that date, the material parts of which are quoted in the report of the other case; that the plaintiffs were unacquainted with lands in West Virginia, and particularly with the tract of four hundred and seventy acres referred to in the agreement; but that the defendant was well acquainted with said tract, and its minerals and its value, and with other mineral lands in that region; and that he induced them to enter into the agreement by false representations concerning said tract and its minerals and value, and said other mineral lands, which representations the count alleged in detail; that on July 22, 1863, they paid him $200, and on September 26, 1863, $1000, on January 16, 1864, gave him their promissory note for $1500 payable in sixty days, which was paid at maturity, and on September 1, 1863, gave him an acceptance of Abiel Abbott in his favor in the sum of $400, upon which they paid him certain amounts; that "said acceptance and all of said sums were so paid under and in consequence of the indenture obtained as aforesaid, and because the defendant assured the plaintiffs that said sums, draft, note and acceptance were needed, and were to be used, to extinguish the claims aforesaid of said squatters, whereas in fact said sums were not so needed, and were not so used, but were misappropriated by the defendant to his own use;" and that, "in consequence of said misrepresentations of the defendant, they were and have been subjected to large expenses, and have devoted much time in examining said four hundred and seventy acre tract, and having one of their number, to wit, said William A. Abbott, go to West Virginia for that purpose; the whole amount claimed by the plaintiffs as damages under this count being $5000, with interest thereon from aforesaid dates when paid to the defendant."

The second count, also in tort, was as follows: "And the plaintiffs say the defendant has converted to his own use $3500 of current money, the property of the plaintiffs; under this count, the plaintiffs will claim the same money described in the first count."

In the third count, which was in contract, the plaintiffs alleged the making of the original written agreement or indenture, and the payment of moneys and an acceptance to the defendant, as alleged in the first count; and alleged "that said acceptance and said several sums were paid and given to the defendant under said agreement and indenture; and that the plaintiffs were induced to pay and give the defendant said sums and acceptance in consequence of the false representations and statements fully set forth in said first count; and the plaintiffs claim said several sums and amounts as moneys had and received by the defendant to the plaintiffs' use, and moneys paid by the plaintiffs to the defendant, with interest thereon from said several dates of payment."

This action was tried in the superior court, before *Brigham,* C. J., at the same time with the second trial of the action of this defendant against these plaintiffs.

At the trial, the plaintiffs gave notice to the defendant that they should " not claim to recover anything from said Pease on account of any alleged statements of said Pease, touching the value or quality or cost of the four hundred and seventy acre tract, or the ores, minerals and coal alleged to have been found thereon." The defendant thereupon asked the judge to rule that the declaration did not set forth any legal cause of action; but he declined so to rule.

In reference to extinguishing the claims of squatters, " it was agreed by the parties that the whole sum the defendant had received for ' that purpose ' (in the language of the original indenture) was $2442.85; that he had actually paid to squatters $1650, namely, $800 paid to Waggy August 10, 1863, and $850 paid to King April 26, 1865, which was more than Pease had received for ' that purpose ' up to January 16, 1864; that on January 16, 1864, the plaintiffs gave the defendant their

promissory note for $1500 on sixty days, which was paid at maturity and constitutes a part of said sum of $2442.85, and on the same day the modification of the original agreement was made ; and the plaintiffs contended that the defendant induced them to make this note by false and fraudulent representations," and upon this issue they introduced the deposition of William A. Abbott, one of their number, portions of whose testimony were as follows:

" About the time the original contract was made, Pease said he thought the squatters could be settled with for some one, two or three thousand dollars, but could better tell after going there and seeing them ; that he would call for no more than he should ascertain would be needed; and that he would like $5000 put in the contract as a nominal sum, and as a limit fixing the extent which we should be liable to pay to extinguish the claims by compromise; and as it would be needful for him to go at once to West Virginia, we agreed to pay $200 within a few days, as is stipulated in the contract."

" On January 16, 1864, at the time the modification of the contract was made, the note of $1500 was not given to Pease as the consideration for such modification, but was given because he said he should need this sum to settle with squatters. About the time the note became payable, Pease called at the office of John S. Abbott and myself, and asked me if the note would be paid, stating that he should need it to pay the squatters the money he had promised them. I replied that the note would be paid ; and after this I did pay the note at its maturity."

" Pease was in our office and asked for more money to settle with squatters, John S. Abbott being present. I told him, in substance, that I could settle with the squatters for less than he had already received. He then, without making reply, left the office. As he was leaving, John S. Abbott stated to him that if he would satisfy us that more money than we had paid him was actually needed to settle with the squatters, he should have it. To this no reply was made. The letter of Pease, dated June 11, 1864, with the draft accompanying it, was sub-

sequently brought to the office by a messenger." This was the letter in which Pease requested these plaintiffs to accept his draft for $1500, and on which he relied, in his action against them, for evidence of notice and demand.

Abiel Abbott, another of the plaintiffs, testified " that he could not swear that the defendant made any representations . as to the purpose for which he desired the $1500 paid on said contract of January 16, 1864, but that he supposed it was to be paid in extinguishment of squatters' claims."

The defendant requested the judge to give the jury the following instructions: 1. " If the jury believe, on the whole testimony, that the parties to the contract of January 16, 1864, believed that the sum of $1500 was paid with the impression, created by the phraseology of that contract or otherwise, that no part of the same was to be paid to the extinguishment of squatters' claims, then no part of it can be recovered back." 2. " There is no evidence on which the plaintiffs can recover in this action." 3. " If at the time of the bringing of this suit money was due Pease on the contract beyond the $5000 which was to be paid to squatters, then Pease has the right to retain such sum, *plus* the sum named in the second count, although there was no personal liability under the contract to pay more than was needed to settle with the squatters."

These requests were not complied with, except so far as appears from this statement of the instructions given: " The plaintiffs, to recover in their action, must prove by preponderance of evidence that they were induced to make payments of money to the defendant by representations, made by him, that he had found that he could effect settlement with squatters, and required for that purpose the money paid to him, when in fact there were not any such squatters, or he had not found that he could effect settlement with them, or the moneys paid on his call and notice were not then or at all required for that purpose, the defendant having no right to call for more than was required for that purpose."

The jury returned a general verdict for the plaintiffs, with damages in the sum of $1087.90; and the defendant alleged

exceptions, which were argued at the same time with the exceptions taken by him on the second trial of the other case, and by the same counsel.

Morton, J. We are of opinion that none of the exceptions taken by the defendant can be sustained.

1, The plaintiffs' declaration contains three counts, two in tort and one in contract, alleged to be for the same cause of action. Gen. Sts. *c.* 129, § 2. At the trial, the plaintiffs gave notice that they should " not claim to recover anything from said Pease on account of any alleged statements of said Pease touching the value or quality or cost of the four hundred and seventy acre tract, or the ores, minerals and coal alleged to have been found thereon." The defendant thereupon asked the court to rule that the declaration did not set forth any legal cause of action. This the court correctly refused to do. If all the allegations referred to in the notice are stricken from the first count, we think it still sets forth a legal cause of action. But this is not material, in this connection, because the third count, in contract, clearly sets forth a good cause of action, and the plaintiffs would be entitled to recover upon it if the allegations are proved. This exception therefore must be overruled.

2. The defendant asked the court to rule that there was no evidence to support the allegations of the declaration. This request was properly refused. The defendant contends that it does not sufficiently appear that the plaintiffs paid the money relying on the representations made; and that they have failed to show that the representations made were false. But William A. Abbott, one of the plaintiffs, testified that the payments were made by them because of representations made by Pease that he needed the money to extinguish squatters' claims; and the facts admitted show that the whole amount received by Pease was not needed or used for that purpose. It is not within our province to judge of the weight or sufficiency of evidence. There was some evidence upon all the material allegations of the declaration, and the court rightly submitted it to the jury.

3. The defendant requested the court to instruct the jury that if they believed, on the whole testimony, " that the parties to

the contract of January 16, 1864, believed that the sum of $1500 was paid with the impression, created by the phraseology of that contract or otherwise, that no part of the same was to be paid to the extinguishment of squatters' claims, then no part of can be recovered back." The essential question involved in this request is, whether the plaintiffs paid the $1500 for the purpose of extinguishing the claims of squatters. This question the court submitted to the jury under proper instructions. Under these instructions, the jury must have found that the plaintiffs made payments to the defendant for the purpose of extinguishing such claims, and were induced to do so by his representations that such payments were required by him for that purpose. These instructions were adapted to the evidence, and sufficient; and no exception lies to the refusal of the court to adopt the language of the prayer.

4. The defendant also requested the court to instruct the jury that, "if, at the time of the bringing of this suit, money was due Pease on the contract beyond the $5000 which was to be paid to squatters, then Pease has the right to retain such sum, *plus* the sum named in the second count, although there was no personal liability under the contract to pay more than was needed to settle with the squatters." The contract provides that the plaintiffs are not to incur any personal liability beyond the sums necessary to settle with squatters, but the defendant is to look to the land for security for all sums beyond that. No money beyond the sum needed to settle with squatters was due and payable to Pease under the contract. If by fraudulent misrepresentations he induced the plaintiffs to pay him more, the law will not allow him to retain it. His fraud cannot enlarge the liability of the plaintiffs. The instruction requested was properly refused.

5. The defendant excepted to the admission of the testimony of Abiel Abbott to the effect that he supposed the $1500 was to be paid in extinguishment of squatters' claims. We think this testimony was admissible. One of the issues which the plaintiffs were required to maintain was, that they were induced to pay this sum by false representations by Pease that he needed

it fcr the purpose of settling with squatters, and that they did pay it for that purpose. The defendant contended that when the payment was made the plaintiffs did not understand that it was to be used for that purpose, but that it was paid to him as the consideration of the modification of the contract made January 16, 1864. The statement of Abiel Abbott objected to was equivalent to a statement that he understood the payment made by him was for the purpose of settling with squatters, and bore directly on this issue.

There were several other questions raised in this bill of exceptions, but as the defendant's counsel did not press them at the argument, we regard them as waived.

*Exceptions overruled.*