COMMONWEALTH *vs.* DAVID R. BROWN.

Suffolk. April 3. — May 15, 1876. COLT & LORD, JJ., absent. June 19. — October 20, 1876.

The provisions of the Gen. Sts. *c.* 132, as to the selecting and drawing of jurors, are within the constitutional authority of the Legislature.

The St. of 1875, *c.* 5, providing that the grand jurors, empanelled at a certain term of the Superior Court, for the county of Suffolk, and who were citizens of the class

qualified by the general laws to serve as grand jurors, "shall for all purposes be deemed and held to be the grand jury of said county, duly and legally drawn, summoned, returned and empanelled," until a certain time, "notwithstanding any irregularity in any writ of *venire facias*, or in the drawing, summoning, returning and empanelling of said grand jurors," is constitutional as to indictments found by said grand jurors after its passage.

If a bad plea in bar in a criminal proceeding, which presents merely a question of law, is submitted to a jury, and, after a verdict thereon for the Commonwealth, overruled by the judge, the defendant has no ground of exception to the order submitting the question to the jury, or to the rulings at the trial of the plea.

Upon the trial of an indictment for an illegal operation upon a woman, with intent to procure a miscarriage, an officer was permitted to testify that he took the defendant, after his arrest, into the presence of the woman, and asked her if the defendant performed an operation upon her ; that the woman said he did ; that the defendant asked the woman if she had been operated on previously by any other person ; that the woman said, "No, she came there to be operated on to get rid of a child." *Held*, that the evidence was admissible.

Upon the trial of an indictment for an illegal operation upon a woman, with intent to procure a miscarriage, certain surgical instruments and a speculum chair, found in the defendant's house, were exhibited to the jury. There was evidence that the chair had been used in performing the operation, and medical experts were allowed to testify that the surgical instruments were adapted to producing abortions, although none of them could be said to be so exactly designed for such use as not to be appropriate also for use in lawful acts of surgery. *Held*, the defendant had no ground of exception to the admission of this evidence.

Medical books cannot be read in evidence to the jury.

No exception lies to the refusal of the judge presiding at the trial of a criminal case, to give instructions as to matters of fact.

No exception lies to a refusal to instruct the jury in the precise words requested, if the instruction is given in substance.

Upon the trial of an indictment for an illegal operation, with intent to procure a miscarriage of a woman who had applied to the defendant for that purpose, the woman testified as a witness, and the defendant requested an instruction that, though she were not to be considered as an accomplice, the jury were to take her statements "with great circumspection and caution and discredit." This was refused ; but the judge instructed the jury that the fact that the witness was implicated in the alleged acts of the defendant might be considered as affecting her credibility and the weight of her testimony. *Held*, that the defendant had no ground of exception.

An indictment under the Gen. Sts. c. 165, § 9, alleged that A. B., at a time and place named, "with force and arms, did unlawfully use a certain instrument, a more particular description of which is to said jurors unknown, by then and there forcing and thrusting said instrument into the body and womb of one C. D., being then and there pregnant with child, with the intent of him, said A. B., thereby then and there to procure the miscarriage of the said C. D.," and concluded in the usual form. *Held*, that the indictment was sufficient.

An indictment may contain two or more counts alleging distinct offences, if they are of the same general description, and the mode of trial and the nature of the punishment are the same.

INDICTMENT in six counts. The first count alleged that David R. Brown, on December 1, 1874, at Boston, "with force and arms, did unlawfully use a certain instrument, a more particular description of which is to the said jurors unknown, by then and there forcing and thrusting said instrument into the body and womb of one Ann Powers, otherwise called Emma L. Smith, she, the said Powers, otherwise called Smith, being then and there pregnant with child, with the intent of him, said Brown, thereby then and there to procure the miscarriage of the said Powers, otherwise called Smith; against the peace of said Commonwealth and the form of the statute in such case made and provided."

The fourth count alleged that the defendant, on December 10, 1874, at Boston, "with force and arms, did unlawfully use a certain instrument, a more particular description of which is to the said jurors unknown, by then and there forcing and thrusting said instrument into the body and womb of one Frances Ordway, otherwise called Frances A. Chase, she, the said Frances, being then and there pregnant with child, with the intent of him, said Brown, thereby then and there to procure the miscarriage of her, the said Frances; against the peace of said Commonwealth and the form of the statute in such case made and provided."

The indictment was found by the grand jury empanelled at January term 1875 of the Superior Court, to serve for six months, and was returned into court on February 6, 1875. On the first day of February term, before the grand jury had proceeded to the transaction of any business, and again, upon being called upon to plead to the indictment, the defendant filed a "special plea to the array of the grand jury," alleging that they were not impartially drawn from the whole body of adult male citizens of the county; that divers competent citizens were arbitrarily and illegally omitted from the list; and that they were not duly summoned and returned; and setting forth more particularly the grounds of objection. The district attorney filed a replication to this plea, traversing the allegations thereof, and setting up the St. of 1875, *c.* 5.

Before the empanelling of a jury for the trial of this plea, the defendant tendered a similar "special plea to the array of the petit jury," which *Brigham*, C. J., overruled, without calling

upon the district attorney to file a replication thereto, and ordered the trial to proceed upon the special plea already filed.

Upon such trial, it appeared that the venire for the grand jury was issued in due form; that the jury list had been prepared by the mayor and aldermen by placing thereon such persons as they thought to be qualified to serve; that the mayor and aldermen, acting together with the city clerk, drew from the box the names of twenty-two persons, and afterwards of nine other persons, and the clerk made separate records of the twenty-two names and of the nine names, placing the latter in the order of their drawing, and delivered copies of both records, omitting from the first the name of one whom he discovered by the records of the city to have served as a juror within three years, to a constable, who discovered by the same records that three others of the twenty-two were exempt by law by reason of their employments, and summoned the remaining eighteen of the twenty-two, and four of the nine, and those so summoned were returned and served as grand jurors. The further particulars of the mode of drawing, summoning and returning these jurors are not material to be set forth.

The judge instructed the jury that the grand jury was a legal body, and the indictment lawfully presented. The jury returned a verdict for the Commonwealth; the defendant alleged exceptions to the rulings aforesaid, and to other rulings at that trial, which it is unnecessary to state; and the case was continued to March term 1875.

At that term, before the jury were empanelled, the defendant filed a motion to quash the indictment on the ground that "there is charged therein no legal offence legally, specifically and formally set forth, and the same is uncertain and insufficient." *Brigham*, C. J., overruled the motion. The defendant then pleaded not guilty, and was tried, and found guilty on the first and fourth counts of the indictment, and not guilty upon the other counts; and a bill of exceptions in substance as follows was allowed:

Emma L. Smith, called by the government, testified that on August 5, 1874, she saw the defendant at his office on Howard Street, in Boston, and consulted him as to her condition, and was thereupon told by him that she was either pregnant or had

a tumor, and that his price for relieving her, by medicine, would be $25, or by an operation, $50 ; that the witness expressed her wish to take medicine for her relief, and, thereupon, received from the defendant a half package of medicine, for which she paid him $13 ; that the witness used this medicine as directed by defendant, without relief, and received, afterwards, more medicine from the defendant, for which she paid him $6, which she used without effect, and so subsequently stated to defendant, who thereupon advised her to submit to an operation by him, and exhibited to her instruments for operating on pregnant women, one of which, a steel instrument, he told her would throw her into labor in a few hours, and the other, a rubber instrument, with a syringe attached, which he told her might not operate for twenty-four hours or longer; that subsequently the defendant introduced into her person and to her womb, an instrument, which the witness did not see, causing her pain ; that this operation was performed in a room she believed to be the defendant's office ; and that, in about three days afterward, the witness, who remained in the house in which said office was, was delivered of a male fœtus, which had apparently been a living fœtus within a few days of its birth.

Frances A. Chase testified that on or about December 10, 1874, she called at the defendant's office, on Howard Street, saw the defendant and told him she thought she was four months advanced in pregnancy and asked him if he took such cases, and the price; that the defendant said he took such cases and the price was from $100 to $500, his lowest price $50; that she told him that all she could spare was $25 ; and that he then told her he sometimes took payment partly in cash and partly in notes, and agreed to take her case on these terms ; and thereupon, two promissory notes were written for her to sign; and, on the evening of the same day, she carried these notes to defendant, paid him $25, and went into a room adjoining his office, where he caused her to be placed in a chair, (the same which was exhibited to the jury at the trial,) and made an examination of her, which caused her considerable pain, which the defendant assured her would be over in a few seconds ; and the defendant told her, as he assisted her from the chair, that she would be all right; that the witness remained in said house the following

night, in a room to which the defendant introduced her, and also during a week afterwards, when she was delivered of a male foetus, which was living before the acts of the defendant upon the witness's person.

John F. George, a police officer, testified as follows : " I am a police officer of Station 3, and assisted in arresting the defendant about six o'clock P. M., on Sunday, December 13, 1874, at house 46½ Howard Street, and on the same night took some surgical instruments — which I now exhibit to the jury — from the drawer of a secretary from a back parlor up one flight of stairs. On the following day I took the defendant into the presence of Emma L. Smith and Frances A. Chase, and asked them in the defendant's hearing and presence if they knew him ; both said they knew him, one knew him as Dr. King, the other knew him as Dr. Brown. I asked them if he performed an operation on them, and they said he did. The defendant asked if they had been operated on previously by any other person ; they said No, they came there to be operated on to get rid of children. The instruments exhibited are all, of any account, I found in the secretary; I might have left some others there ; I took only such as I thought would apply to this case, as Dr. Cilley suggested; there were some small instruments there like sail-needles." All this testimony of the witness George, as well as the exhibition of the surgical instruments by him, were excepted to by the defendant.

A chair, called by some of the witnesses " a speculum chair," which there was evidence tending to prove was used by the defendant in performing the operation upon Frances A. Chase, was brought into court during the trial, and it and its mechanism were exhibited to the jury, against the objection and exception of the defendant. The testimony of two persons who were physicians and surgeons was admitted, against the objection and exception of the defendant, both of whom testified that most of the surgical instruments exhibited were adapted to producing the abortion of pregnant women, although none of them could be said to be so exactly designed for such use as not to be appropriate also for use in necessary and lawful acts of surgery.

The defendant testified in his own behalf that the surgical instruments exhibited were none of them adapted to use in pro-

ducing ,abortion, and were all adapted and in common use in lawful and necessary surgical operations. The defendant explained to the jury the purpose and use of each instrument and of said speculum chair, as he testified. The defendant offered and asked permission to read to the jury, books of medical authority as to any matter of which medical experts might testify, and as to the uses of any of the instruments exhibited. The evidence of such books was rejected by the court, and the defendant excepted. The defendant testified that he was a grad· uate of the medical department of Bowdoin College, and had practised medicine and surgery for from thirty to forty years; that the witness, Emma L. Smith, called upon him to be treated for a tumor on the neck of her womb, declaring that she did not think she was pregnant, and that the defendant examined and treated her medicinally and surgically for a tumor discovered by him on the neck of her womb; and that he neither administered to her or advised her to use any medicine which was capable of producing any abortive effect, or, by the use of any surgical instrument, did any act for the purpose of producing or tending to produce an abortion. The defendant also testified that the witness, Frances A. Chase, came to his office, in company with a man, who stated to the defendant that this woman had been operated on by a midwife to procure an abortion, and that the defendant undertook, at the request of this man, to treat said Chase, medicinally and surgically, to relieve her of a dead foetus in her womb, and of the maladies incident to her condition, when the defendant saw her for the first time; that the defendant examined and treated and operated upon the said Chase, exclusively for the discovery of a dead foetus in her womb, and its removal, and the cure of maladies incident to the death of that foetus, and denied any unlawful or criminal act in relation to her for the purpose of causing or having any tendency to cause abortion of a living foetus. The defendant also put in testimony tending to contradict the testimony of George, the policeman.

The defendant submitted thirty requests for instructions to the jury, of which eleven were given; and the others are sufficiently stated in the opinion, except the following:

" 20. That an operation for the removal of·the tumor alone, although produced by the defendant, will not enable the jury to convict the defendant upon this indictment.

" 25. That under the first count, if it is doubtful whether abortion was produced or attempted by instruments or other means used for procuring abortion, without lawful justification, then the defendant is not guilty.

" 29. That, although the two women are by law not to be considered or treated as accomplices, still the jury are to take their statements with great circumspection and caution and discredit."

The judge also instructed the jury as follows : " As by the defendant's testimony it is confessed that he inserted into the bodies of each of the women named an instrument, which does not appear to have been known to the grand jury who found the indictment, on December 10th and on December 11th last, at Boston, the only practical questions to be considered by the jury in relation to the first and fourth counts are, first, whether, at the time when this instrument was inserted into their bodies by defendant, the women were pregnant with child; and second, whether this instrument was thus inserted into the bodies of these women unlawfully, that is to say, without justification in law. As to these two questions, the jury are instructed that the allegations of the indictment, that an instrument was forced and thrust into the bodies of these women, are substantially and sufficiently proved by evidence that such instrument was inserted into their bodies by any degree of mechanical force.

" As to the first question, the jury are instructed that the proof on the part of the prosecution must be, that, at the time of the defendant's acts upon the bodies of said Ann Powers and said Frances Ordway, they were pregnant with children which had vitality, so that in the course of nature they could mature into living children. The statute is intended to prevent and punish the destroying of embryo human life, the germs of human life before birth in the course of nature, and would not apply to acts to procure the miscarriage of a woman having a dead fœtus in her womb.

" As to the second question, affecting the lawfulness of the defendant's acts, the jury are instructed that a physician may lawfully procure the miscarriage of a woman pregnant with child, by any means appropriate and reasonable for that purpose, directly or indirectly applied, if in so doing he acts in good faith for the preservation of the life or health of such pregnant woman.

The justification of a physician thus acting must depend upon his exercising his best skill and judgment, and in the honest belief that his acts directly applied to produce a miscarriage, or applied to the treatment of a disease so as to involve a miscarriage, as a not unusual incident of such treatment, are necessary to save such pregnant woman from great peril to her life or health. Acts for the purpose of procuring the miscarriage of a woman pregnant with child, to be unlawful, need not be done in a spirit of wanton cruelty or wicked revenge; but would be unlawful if done from any wicked, base or sordid motive, offensive to good morals or injurious to society. Such acts would be none the less unjustifiable because done by the consent or upon the solicitation of the pregnant woman whose miscarriage was attempted to be procured, or because done to screen such a woman from exposure or disgrace, or for gain or reward.

" The possession by a physician of surgical instruments adapted to use in procuring the miscarriage of pregnant women would be explained consistently with that physician's innocence of any intention to use them for unlawfully procuring miscarriages, if they were instruments also adapted equally to other and legitimate uses in surgery or midwifery, unless their extraordinary number and variety was in more than ordinary proportion to the whole number and variety of surgical instruments possessed by him, or the exigencies of his practice furnished him occasions for using; but the significance as evidence, of the possession of any number or variety of surgical instruments adapted especially to procuring miscarriage of pregnant women, would more or less depend upon circumstances, usual or unusual, ordinary or extraordinary, attending the mode of their possession and keeping, and the exigencies of such physician's practice.

" Inasmuch as Ann Powers and Frances Ordway, by their solicitation of or consent to the acts of defendant, alleged to be unlawful, were severally implicated in these acts, and their unlawful and criminal character, that fact may justly be considered by the jury as affecting their credibility as witnesses and the force and weight of their testimony."

After verdict, the defendant filed a motion in arrest of judgment for the same reason assigned in the motion to quash the indictment. This motion was overruled; and the defendant alleged exceptions.

The court directed the objections to the grand jury to be first argued.

*G. W. Searle*, for the defendant.

*W. C. Loring*, Assistant Attorney General, ( *C. R. Train*, Attorney General, with him,) for the Commonwealth.

GRAY, C. J.    The court has no doubt that the provisions of the Gen. Sts. *c.* 132, as to the drawing and selecting of jurors, are within the constitutional authority of the Legislature.    Both before and since the adoption of the Constitution of the Commonwealth, the Legislature of Massachusetts has defined the persons who should constitute the class from which jurors should be taken, and has authorized the list to be made up of such persons as the municipal authorities should select from that class. Anc. Chart. 144, 221, 282, 332.    Sts. 1784, *cc.* 4, 7 ; 1793, *c.* 63 ; 1802, *c.* 92 ; 1807, *c.* 140 ; 1812, *c.* 141.    Rev. Sts. *c.* 95.    6 Dane Ab. 227–230.    *Commonwealth* v. *Smith*, 9 Mass. 107.    *Page* v. *Danvers*, 7 Met. 326.    And see U. S. Sts. 1789, *c.* 20, § 29 ; 1800, *c.* 61 ; U. S. Rev. Sts. § 800 ; *United States* v. *Dow*, Taney, 34, 36 ; *Clinton* v. *Englebrecht*, 13 Wall. 434, 444.

The grand jury by which this indictment was found was empanelled at January term 1875 of the Superior Court, to serve for six months ; the venire issued by the clerk of the court was in due form ; and the persons who constituted this grand jury were qualified by law to serve as grand jurors.    Gen. Sts. *c.* 171, §§ 1–3.    The special objections made by the defendant to the constitution of this grand jury are based upon errors in the mode of drawing, summoning and returning them.

But by the St. of 1875, *c.* 5, which was passed and took effect on February 5, 1875, it was enacted by the Legislature that the grand jurors empanelled at January term 1875 in Suffolk should " for all purposes be deemed and held to be the grand jury of said county, duly and legally drawn, summoned, returned and empanelled " for each term within the six months, " notwithstanding any irregularity in any writ of *venire facias*, or in the drawing, summoning, returning and empanelling of said grand jurors."

This indictment was presented to the court after the passage of this act.    The question before us therefore is whether this statute was constitutional so far as concerned future indictments. The Legislature might have provided that the grand jurors

should be drawn, summoned and returned by the mayor and aldermen, the city clerk and the constable, in the very way which was in fact followed in this case; and it was within its constitutional authority to enact that citizens of the class qualified by the general laws to serve as grand jurors, and who were in attendance upon the court as such, in one or all of the counties of the Commonwealth, although irregularly drawn, summoned and returned, should constitute the grand jury of the county for the residue of the usual period of service. As applied to indictments found after the passage of the statute, the statute is not *ex post facto,* and is clearly within the constitutional power of the Legislature. *Commonwealth* v. *Phillips,* 11 Pick. 28. *Locke* v. *New Orleans,* 4 Wall. 172. *Gut* v. *State,* 9 Wall. 35.

This case does not require us to consider whether this statute could be held to be within the class of laws correcting mistakes and curing defects and irregularities in past proceedings of courts and other public bodies within their general jurisdiction and authority, and thus to make valid indictments found before its passage. See Prov. St. 1760 (33 Geo. II.) § 6, Anc. Chart. 627 ; *Foster* v. *Essex Bank,* 16 Mass. 245, 273 ; *Simmons* v. *Hanover,* 23 Pick. 188, 194; *Denny* v. *Mattoon,* 2 Allen, 361, 377, 384; *State* v. *Doherty,* 60 Maine, 504; *Thomson* v. *Lee County,* 3 Wall. 327, 331.

The result is, that the objections to the grand jury by which this indictment was found cannot be sustained, and that, upon the other points stated in the exceptions, the case must stand for                                      *Further argument.*

The case was submitted on briefs, on the remaining questions, to the whole court, in June, 1876.

*G. W. Searle,* for the defendant.

*C. R. Train,* Attorney General, *&* *W. C. Loring,* Assistant Attorney General, for the Commonwealth.

MORTON, J. It is settled by the former decision in this case that the St. of 1875, *c.* 5, cured any defects which may have existed in the drawing, summoning, returning and empanelling of the grand jury who found the indictment against the defendant, and that, therefore, the facts alleged in the defendant's special

plea furnished no cause for challenging the array of the grand jury. The Superior Court might and should have overruled the special plea as matter of law. *Commonwealth* v. *Lannan*, 13 Allen, 563. There were no material facts to be submitted to a jury or other body of triers.

But the error of the presiding justice, in submitting the special plea to a jury, was immaterial. It has been repeatedly held that, where a question of law is erroneously submitted to a jury, if the jury decide it rightly neither party has any ground of exception, because he is not aggrieved. *Ricker* v. *Cutter*, 8 Gray, 248. *Krebs* v. *Oliver*, 12 Gray, 239. *Smith* v. *Faulkner*, 12 Gray, 251. For the same reason, if there were any erroneous rulings in the trial of the defendant's special plea before the petit jury, he has no ground of complaint, because he was not in any manner prejudiced thereby. As the whole proceedings in that trial were immaterial, and the final ruling of the court overruling the special plea was correct as matter of law, it is not necessary to consider whether the several rulings of the Superior Court during such trial were correct, because the defendant was not aggrieved, or his rights affected by them.

At the term next after that in which his special plea was overruled, the defendant was tried upon the merits before another jury to which no objection was made, and during the trial he alleged numerous exceptions which remain to be considered.

1. The admission of the statements of Emma L. Smith and Frances A. Chase, made in the presence and hearing of the defendant, was proper. The rule is that a statement made in the presence of a defendant, to which no reply is made, is not admissible against him, unless it appears that he was at liberty to make a reply, and that the statement was made by such person and under such circumstances as naturally to call for a reply unless he intends to admit it. But if he makes a reply, wholly or partially admitting the truth of the facts stated, both the statement and the reply are competent evidence. *Commonwealth* v. *Kenney*, 12 Met. 235. *Commonwealth* v. *Galavan*, 9 Allen, 271. In this case, when Emma L. Smith and Frances A. Chase stated that the defendant had performed an operation on them, he did not remain silent, but asked them in reply if they had been previously operated upon by another person. The jury might infer

from this an admission by him of the truth of their statements. The facts that the defendant was under arrest, and was taken by the officer to their presence, do not destroy the competency of the evidence. It follows that the court properly refused the seventh and thirtieth prayers for instructions.

2. The "speculum chair," and other surgical instruments adapted to use in producing abortion, found in the possession of the defendant, were properly put in evidence, for the same reasons that, upon a trial for burglary, implements of burglary found in the defendant's possession are admissible. They tend to show that the defendant had the means and opportunity to commit the offence charged. The fair inference to be drawn from the evidence was for the jury, and it was submitted to them with proper instructions. It was clearly competent for medical experts to testify that the instruments found were adapted to produce abortion, that being a matter within their special experience, and beyond the range of general knowledge.

3. The refusal of the court to allow the defendant to read to the jury books of medical authorities was in accordance with the well settled practice in this Commonwealth. *Commonwealth* v. *Sturtivant*, 117 Mass. 122, and cases cited.

4. The rulings of the court refusing to give various instructions requested by the defendant were correct. There was evidence tending to prove all the allegations of the first and fourth counts, upon which alone the defendant was convicted.

The eighth, ninth, thirteenth, fourteenth, fifteenth, eighteenth, twenty-second, twenty-third, twenty-sixth, twenty-seventh and twenty-eighth prayers for instructions are requests to the court to instruct the jury upon matters of fact, and were properly refused.

The instructions requested in the twentieth and twenty-fifth prayers were given in substance by the presiding justice, who was not bound to adopt the precise words of the defendant. *Brown* v. *Pease*, 104 Mass. 291, 308. Nor was he required to instruct the jury in the words of the twenty-ninth request, that the testimony of the two women who, at their own request, were operated upon by the defendant, was to be taken with "great circumspection and caution and discredit." He properly left the fact of their complicity in an unlawful act to be considered

by the jury "as affecting their credibility as witnesses and the force and weight of their testimony." It was for the jury, and not for the court, to say how far, under all the circumstances, they were to be believed.

The instructions given contain no error of law, and were appropriate to the facts of the case.

5. The motion to quash the indictment and the motion in arrest of judgment were properly overruled. The several counts allege with certainty all the facts which constitute the offence described in the statute.

The objection that the indictment is bad because more than one offence is joined in it cannot be sustained. It is settled in this Commonwealth that several offences may be charged in the same indictment when they are of the same general nature, and when the mode of trial and the nature of the punishment are the same. *Carlton* v. *Commonwealth,* 5 Met. 532. *Booth* v. *Commonwealth,* 5 Met. 535. *Josslyn* v. *Commonwealth,* 6 Met. 236. *Commonwealth* v. *Costello,* 120 Mass. 358.

*Exceptions overruled.*