## State *versus* Isaac Clough.

The *venires* for grand jurors need not direct the constables in what manner they should notify the meeting in their towns for drawing the jurors.

It is well, although not indispensable, that the constables should state in their returns what notice was given.

The burden of proof, that the notice was defective, is upon the one alleging it.

A constable may be allowed by the Court to amend his return upon the *venire* according to the facts.

A person drawn as a grand juror, without any notice to the inhabitants of the town, and with only a verbal notice to the municipal officers, has no author- ity to act as such, although duly sworn.

The mere presence of a stranger at the finding of an indictment, does not ren- der it void, *if he does not act.*

But if an unauthorized person participates in the proceedings, the indictment is void, though twelve competent grand jurors concurred in finding it.

On Report.

This was an indictment for perjury, found at the March term, 1861.  Before pleading, the respondent moved to quash the indictment, because the grand jury that found it was not legally drawn, and had no power to act in the prem-

ises, for the following reasons, which fully appear by the record thereof here in Court produced and made a part of this motion : —

1. The venires are insufficient and defective in not speci-* fying the manner of notifying and warning the town meeting for the draft of said jurors, according to the requirement of the statute in such case made and provided.

2. The return of the officer on said venires does not show that any town meeting was notified to meet for the purpose mentioned in said venires, in the manner required by the statute in that case made and provided; nor does it show that any such meeting was held, or that the town clerk, or any one of the municipal officers, was present or drew the name of the person returned by him as grand juror from the box kept for that purpose.

3. That James Robbins of Vassalboro', Henry A. Stanley of Winthrop, Benjamin Marston of Farmingdale, James Carson of Mt. Vernon, George W. True of Litchfield, and J. E. Sturdy of Augusta, were admitted into the grand jury room at the term when this indictment was found, and allowed to act as jurors, when they had not been legally drawn or summoned as such, but were mere unauthorized strangers thereto.

After this motion was filed, the constables of Vassalboro', Farmingdale and Winthrop, by leave of Court, amended their returns. The following is a copy of the return of the constable of the town of Winthrop, as amended : —

"Kennebec, ss. Winthrop, Nov. 17, 1860. I have notified and warned such of the freeholders and other inhabitants of the town of Winthrop aforesaid, as are qualified by law to vote in the choice of representatives, and particularly the Selectmen and Town Clerk, to assemble, as within directed, to appoint as the law directs, one man to serve as grand juror at the within mentioned Court; and Henry A. Stanley was appointed for that purpose, and I have notified and summoned him four days before the sitting of said Court, to appear and attend the same accordingly."

The returns of the other constables were similar, except that of the city of Augusta.

The constable of Augusta, by leave of Court, amended his return so as to read as follows :—

"Kennebec, ss. Augusta, Nov. 17, 1860. On this day I verbally notified the Mayor, Aldermen and City Clerk of the city of Augusta, to assemble on the same day as within directed, to appoint as the law directs, one man to serve as grand juror at the within mentioned Court, and J. E. Sturdy of the city of Augusta was appointed for that purpose," &c.

The *venires* directed the constables to "notify and warn the inhabitants," &c., without specifying the manner of notifying.

Upon these facts, it was agreed to report the case to the law Court, to determine the validity of the indictment.

*J. Baker*, for respondent.

*Drummond, Attorney General*, for the State.

The opinion of the Court was drawn up by

DAVIS, J.—To the indictment in this case the defendant filed a written motion, in the nature of a plea in abatement, praying that it might be quashed, for the reason that some of the grand jurors by whom it was found were not legally drawn, and had no authority to act in the premises. The validity of the indictment is submitted to us, by agreement, upon the facts which appear by the venires, and the returns thereon.

The *venires* did not direct the constables to whom they were sent, in what manner they should notify the meetings in their respective towns for drawing the jurors. This was not necessary. The mode of giving notice was prescribed by statute, except in those towns where the inhabitants had fixed some other mode. And it was the duty of the constable in each town to give the one or the other. The statute has since been changed, making the notice uniform in all cases. But no statute, or rule of law, has ever required the notice to be set out in the *venire*.

Nor is it indispensable that the constable should state in his return what notice he has given, though he ought to do so. The facts, if necessary, can be proved *aliunde. Amer ican Bank* v. *Doolittle*, 14 Pick., 123.

Upon all the *venires* but one, in the case at bar, nothing appears in the returns, except the fact that the constables "notified the inhabitants," &c. But, upon a collateral issue, like the one before us, the notice will not be presumed to have been defective, without evidence. *Gilmore* v. *Holt*, 4 Pick., 258. The jurors are admitted to have been regularly acting as such, under the direction of the presiding Judge. The defendant having alleged in his plea that they were "not legally drawn or summoned," the burden of proof is upon him to show it, *dehors* the record, or by it. 1 Greenl. Ev., § 92.

After this indictment had been returned, some of the constables came into Court, and were allowed to amend their returns according to the facts. This has been done, even after a verdict, in a capital case. *Commonwealth* v. *Parker*, 2 Pick., 550.

But the return of the constable of Augusta, shows affirmatively, that *J. E. Sturdy* was drawn as a grand juror without any notice to the inhabitants, and with only a verbal notice to the municipal officers. Sturdy was one of the grand jury by whom the indictment was found. Though duly sworn, he had no authority to act.

In *Low's case*, 4 Greenl., 439, all the jurors were competent, but the indictment was found by less than twelve. In *State* v. *Symonds*, 36 Maine, 128, three jurors who were disqualified, because not legally drawn, acted in finding the indictment, and it was quashed because there were only *eleven* who were qualified. In the case at bar there were *seventeen*, for aught that appears, who were competent to act. Does the fact that another was present, and acted with them, who was incompetent, render the indictment void?

The mere fact that a stranger *was present* when the in-

State *v.* Clough.

dictment was found, would not render it void. Though obviously proper, and highly important, that the proceedings of a grand jury should be in secret, one who is indicted cannot take any advantage of it if they are not. *Shattuck* v. *The State,* 11 Ind., 473. The secrecy is not required for his benefit,—but otherwise. "One reason may be to prevent the escape of the party, should he know that proceedings were in train against him; and another may be, to secure freedom of deliberation and opinion among the grand jurors, which would be impaired if the part taken by each might be known to the accused." 1 Greenl. Ev., § 252.

But the fact that an incompetent juror was not only present, but participated in the proceedings, presents a more serious question; not on the ground that, without his concurrence, there were not twelve jurors in favor of finding the indictment. Such a fact, if essential, must have been pleaded. But even if the jury were unanimous in finding the bill, they might have been so influenced by arguments and opinions of each other, that it would be impossible for us to know that the indictment would certainly have been found, if none but the competent jurors had acted.

The question here presented was first raised in the fourth year of Charles the First, in *Withipole's* case. *Three* of the jury of inquest were incompetent to serve; and the indictment was quashed for that reason, though there were more than twelve remaining. Cro. Car., 134, 147. This decision was under the statute 11 Hen. IV., c. 9, which made "void" all indictments so found. Such has been the law of England ever since that time. 2 Hale's P. C., 60, 155; 4 Black., 302. And the same rule has been adopted in this country. *State* v. *Duncan,* 7 Yerg. (Tenn.) 271; *Barney* v. *State,* 12 S. & M. (Miss.) 68; *State* v. *Jacobs,* 6 Texas, 99.                    *Indictment quashed.*

TENNEY, C. J., RICE, MAY, GOODENOW and KENT, JJ., concurred.