## UNITED STATES *v.* RICHARDSON.

*(Circuit Court, D. Maine. July 10, 1886.)*

1. CRIMINAL LAW—JURISDICTION—INDICTMENT REMITTED FROM DISTRICT COURT—REV. ST. § 1038.
   Circuit court has jurisdiction of indictment remitted under Rev. St. § 1038, after defendant has pleaded in the district court.

2. JURY—OBJECTIONS TO GRAND JURORS, HOW TAKEN.
   A party under recognizance cannot challenge the array of grand jurors, when his objection is to a portion only of the panel, but may challenge individuals, or plead in abatement.

3. CRIMINAL LAW—PLEAS IN ABATEMENT—MISDEMEANOR.
   To an indictment for misdemeanor, defendant, by leave of court, may file two or more pleas in abatement.

4. JURY—DRAWING AND SUMMONING OF GRAND JURORS.
   Rev. St. §§ 800, 802, 803, only re-enact the provisions of earlier statutes regulating the qualification, drawing, and summoning of jurors. It is within the power of the courts of the United States, conforming as near as may be convenient and safe to the practice and statutes of the states respectively in which they are held, to have their jurors drawn by the state authorities. The long-established method of drawing and notifying grand jurors in the First circuit held to be legal.

5. SAME—ACT JUNE 30, 1879, CH. 52, § 2.
   The act of 1879 provides two methods of drawing jurors for the courts of the United States one, by drawing from a box containing names put in by the clerk and a commissioner of the court; the other, if the judge so orders, by drawing "from the boxes used by the state authorities in selecting jurors in the highest courts of the state." If the second method is adopted, the mode of drawing, or of summoning and returning, grand jurors is regulated by the unrepealed provisions of the Revised Statutes.

**6. SAME—DRAWING JURORS—NOTICE OF TOWN MEETING.**

    The validity of an indictment is not affected when the town meeting at which grand jurors were drawn was held the prescribed time before the session of the court, though the notice of that meeting was posted less than the number of days required by statute.

**7. SAME—ACT JUNE 30, 1879—POWER OF DISTRICT JUDGE.**

    Under section 2, c. 52, act June 30, 1879, the district judge may order the names of jurors of the circuit court to be drawn from the boxes used by the state authorities.

At February term, 1886, of the district court, the defendant was indicted for making a fraudulent claim for a pension, and pleaded six pleas in abatement, each verified by the defendant's oath; and alleging that Orin K. Phinney and John H. Davis, of Standish, in this district, who served at that term as two of the grand jurors who found and returned this indictment, were not duly and legally drawn to serve as grand jurors. The first plea also alleged that said Phinney and Davis were drawn and summoned pursuant and in obedience to a supposed writ of *venire facias*, issued from that court by the clerk, on January 7, 1886, (which writ, with the return thereon, was produced and set forth by the defendant, and is copied in the margin;[1]) and that it was not served by a person qualified and empowered by the laws of the United States to serve a writ of *venire facias* issued

---

[1] [Seal.] "*District of Maine, ss.—The President of the United States of America to either of the Constables of the Town of Standish, in said District, Greeting:* You are hereby required to notify, as the law directs, the inhabitants of said town qualified to vote for representatives, and especially the municipal officers and town clerk, to assemble at least six days before the first Tuesday of February, A. D. 1886, and be present at the draft of two good and lawful men of said town to be chosen and appointed to serve as grand jurors, and two other good and lawful men to be chosen and appointed to serve as petit jurors, at the United States district court which is to be holden at Portland within and for our district of Maine, on said first Tuesday of February, A. D. 1886, being the second day of said February. And you are also required to notify the persons so drawn at least four days before the sitting of said court, and summon the said persons chosen and appointed as grand jurors to appear before and attend our said court accordingly, at ten of the clock in the forenoon of the said second day of February, and the persons chosen and appointed as petit jurors to appear before and attend our said court accordingly, at ten of the clock in the forenoon of the ninth day of February, 1886, either by reading to them this *venire*, with the minute of their having been drafted indorsed thereon, or by leaving at their usual place of abode a written notification of their having been drawn as aforesaid, and also of the time and place of the sitting of the court, and when they are required to attend.

"Hereof fail not, and make return of this writ, with your doings therein, to the marshal of our said district or his deputy, by the time of holding the same.

"Witness Hon. Nathan Webb, at Portland, this seventh day of January, A. D. 1886.

"WM. P. PREBLE, Clerk."

"JANUARY 30, A. D. 1886.

"*District of Maine—ss.:* Pursuant to the above *venire*, I notified the inhabitants of said Standish qualified to vote for representatives, and especially the municipal officers and clerk of said town, by posting notices thereof in two public and conspicuous places in said town, to-wit, one at the store of John H. Rich, in said town, and one at the store of William H. Libby, in said town, on the twenty-third day of January, A. D. 1886, which was at least four days before said meeting, to assemble for the purposes therein expressed, on the twenty-sixth day of January, A. D. 1886, when the following persons were drawn as the law directs, viz., Orin K. Phinney and John H. Davis to serve as grand jurors, and William M. Davis and John E. Rand to serve as petit jurors, at said court; and I have duly notified and summoned each of them to attend said court, as I was therein directed, four days previous to the sitting thereof.

"C. S. PHINNEY, Constable of Standish.

"Fees for the service, $2.00."

from a court of the United States. To this plea a replication was filed, alleging that the *venire*, in said plea set forth, and denominated a supposed writ of *venire facias*, was one of 11 *venires*, directed respectively to either of the constables of 11 towns and cities, and issued from the court by the clerk on January 7, 1886, and described in a writ of *venire facias* issued by him on the same day, under the seal of the court, and in the words and figures following:

"*District of Maine, ss.—The President of the United States of America to the Marshal of our District of Maine, or his Deputy, Greeting:* We command you to cause to come before our district court next to be holden at Portland, within and for our district of Maine, on the first Tuesday of February, 1886, from the several towns mentioned in eleven *venires* of this date, herewith transmitted, and in the proportions therein specified, twenty-two good and lawful men to serve as grand jurors, and eighteen good and lawful men to serve as petit jurors, at our said court; and the names of the persons returned to you by virtue of said *venires* you will return, together with this precept, into our said court, on the first day of its session, by the time of holding the same. Hereof fail not.

"Witness the Honorable Nathan Webb, at Portland, this seventh day of January, A. D. 1886.                    WM. P. PREBLE, Clerk."

—That the said writ of *venire facias*, together with said 11 *venires*, was transmitted by the clerk to the marshal for service, and thereafter the marshal made service of said writ of *venire facias*, and returned the same to the court on the first day of its session, by the time of holding the same, with his return of service thereon, as follows:

"FEBRUARY 2, A. D. 1886.

"*United States of America—Maine District—ss.:* In obedience to the within precept, I have caused twenty-two good and lawful men to be summoned to serve as grand jurors, and eighteen good and lawful men to be summoned to serve as petit jurors, to come before the district court at the February term mentioned in the eleven *venires* committed to me at the same time with the precept for distribution; and the names of the persons returned to me by virtue of said *venires* are herewith returned to court.

"GEORGE D. BISBEE,
"U. S. Marshal, District of Maine.

Max. Comp.,   $50.00
Pd. Constables,   22.00
                ———
            $28.00"

—That the marshal at the same time returned to the court a list containing the names of the persons returned as grand jurors, (a copy of which list was set forth, including the names of Orin K. Phinney and John H. Davis, of Standish;) and that Phinney and Davis named in the list were the same who served as grand jurors in finding and returning this indictment.

To this replication the defendant **demurred**, and the United States joined in demurrer.

Second plea, that said Phinney and Davis were drawn as grand jurors by a person not qualified and empowered by law to act in the

premises, pursuant to the aforesaid writs addressed to either of the constables of Standish, and to the marshal, (copies of each of which, and of the return thereon, were set forth in the plea.) Replication, that they were drawn by Leander H. Moulton, one of the selectmen of the town of Standish. Demurrer to this replication, and joinder in demurrer.

Third plea, that said Phinney and Davis "had not then and there been publicly drawn from a box containing, at the time of said drawing, the names of not less than three hundred persons possessing the qualifications prescribed in section eight hundred of the Revised Statutes, which names had been placed therein by the clerk of said district court, and a commissioner appointed by the judge of the said district court." Demurrer and joinder.

Fourth plea, that said Phinney was not lawfully caused to come into court to serve as a grand juror, because he came in obedience to a supposed writ of *venire facias*, issued by the clerk of the court on January 7, 1886, and pretended to have been served by a constable of Standish, (producing and setting forth that writ, and the constable's return thereon, as in the first plea;) and that writ was delivered to the constable by the marshal, who had been commanded by the court, by a certain precept, (which, with the marshal's return thereon, was set forth as in the replication to the first plea,) to cause to come before it, from several towns mentioned in 11 *venires*, of which the before-mentioned supposed writ of *venire* was one, 22 good and lawful men to serve as grand jurors. Demurrer and joinder.

Fifth plea, that said Phinney "was not drawn at any meeting lawfully notified and held for the purpose of drawing grand jurors, in pursuance of a supposed writ of *venire facias* issued from said court, (which, with the constable's return thereon, was produced and set forth as in the first plea,) in this: that no notice was given of the place where the inhabitants of the town of Standish qualified to vote for representatives, and especially the municipal officers and town clerk of said town, should assemble and be present at the draft of two good and lawful men, to be chosen and appointed to serve as grand jurors at said term of said court; and the notices for said assembling were posted in two public and conspicuous places in the town of Standish only three days before the day so notified for said assembling." Replication, "that notice was given of the place where the inhabitants of the town of Standish qualified to vote for representatives, and especially the municipal officers and town clerk of said town, should assemble and be present at the draft of two good and lawful men, to be chosen and appointed to serve as grand jurors at the said February term of said court." Demurrer and joinder.

Sixth plea, that the writ upon which said Phinney was notified and summoned by a constable of Standish "contained no minute indorsed thereon, by either the town clerk or municipal officers of said town of Standish, that said Orin K. Phinney was drawn at any meet-

ing of the inhabitants of said town to serve as a grand juror at the term of the court aforesaid." Demurrer and joinder.

By order of the district court, under section 1038 of the Revised Statutes, the indictment was remitted to the circuit court.

*Wilbur F. Lunt* and *William M. Bradley*, for defendant.

*George E. Bird*, Dist. Atty., for the United States.

Before GRAY, Justice, and COLT, J.

GRAY, Justice. The defendant, having been indicted in the district court, pleaded six pleas in abatement, all relating to the method of drawing and summoning two of the grand jurors who found and returned the indictment. The questions thus presented so deeply affect the administration of criminal justice in this circuit that the case was remitted to this court, and heard before two judges; and at their suggestion, and with the consent of counsel, the district judge was present at the argument, and he concurs in this opinion.

There can be no doubt that by virtue of the order of the district court transmitting the indictment to this court, although made after the defendant had pleaded, this court has jurisdiction of the case, and of the questions arising upon the pleas. *U. S.* v. *Murphy*, 3 Wall. 649.

The district attorney contends that, the defendant having been under recognizance to await the action of the grand jury, the objections suggested cannot be made by plea in abatement, and should have been taken by challenge to the array. But as the objections are pleaded to only two of the grand jurors, they afforded no ground for a challenge to the array. *Com.* v. *Walsh*, 124 Mass. 32. It is not doubted that they might have been taken by way of challenge to each of those jurors. MARSHALL, C. J., 1 Burr's Trial, 37, 41, 43; Rev. St. §§ 808, 812, 820. But they may equally well be taken by plea in abatement.

In a recent case, brought before the supreme court by certificate of division of opinion between the judges of a circuit court upon a motion in arrest of judgment, four persons, otherwise competent, had been excluded from the panel of the grand jury under section 820 of the Revised Statutes, the constitutionality of which was controverted, but was not passed upon, because the supreme court held that by pleading not guilty to the indictment, and going to trial without making any objection to the mode of selecting the grand jury, such objection was waived; and Mr. Justice BRADLEY, delivering judgment, reviewed the leading authorities, and laid down the following rules as to the time and manner of objecting to grand jurors:

"The defendants should either have moved to quash the indictment, or have pleaded in abatement, if they had no opportunity, or did not see fit, to challenge the array. This, we think, is the true doctrine in cases where the objection does not go to the subversion of all the proceedings taken in impaneling and swearing the grand jury, but relates only to the qualification or disqualification of certain persons sworn upon the jury, or excluded therefrom, or to mere irregularities in constituting the panel." "There are cases, un-

doubtedly, which admit of a different consideration, and in which the objection to the grand jury may be taken at any time. These are where the whole proceeding of forming the panels is void; as where the jury is not a jury of the court or term· in which the indictment is found; or has been selected by persons having no authority whatever to select them; or where they have not been sworn; or where some other fundamental requisite has not been complied with." *U. S.* v. *Gale,* 109 U. S. 65, 67, 71; S. C. 3 Sup. Ct. Rep. 1.

The opinion thus expressed, that objections to grand jurors, which the defendant either "had no opportunity, or did not see fit," to interpose by way of challenge, may be pleaded in abatement, though not strictly necessary to the decision of that case, cannot properly be disregarded by a circuit court.

It may also be observed, although the statutes and the practice of the states do not control the rules of pleading in criminal cases in the courts of the United States, that, by the existing practice in the courts of each of the states within this circuit, such objections may be taken by plea in abatement. The suggestion in *Com.* v. *Smith,* 9 Mass. 107, that objections to the personal qualifications of the grand jurors, or to the legality of the returns, must be made before the indictment is found, was not necessary to the decision of the case, which went upon another ground. It was disapproved, and not followed, in *Com.* v. *Parker,* 2 Pick. 550, 563; and in later cases in Massachusetts objections to the *venires* and returns have been raised and decided upon pleas in abatement. *Com.* v. *Brown,* 121 Mass. 69; *Com.* v. *Moran,* 130 Mass. 281. In the courts of Maine objections to the qualifications, drawing, and summoning of grand jurors have been repeatedly determined on plea in abatement or motion to quash, without a suggestion that the defendant's right to take advantage of them in this way depended on the question whether he had or had not previously been bound over. *State* v. *Symonds,* 36 Me. 128; *State* v. *Lightbody,* 38 Me. 200; *State* v. *Clough,* 49 Me. 573; *State* v. *Carver,* Id. 588; *State* v. *Quimby,* 51 Me. 395; *State* v. *Flemming,* 66 Me. 142. In *State* v. *Rand,* 33 N. H. 216, 227, Chief Justice PERLEY said: "Regularly, an objection to one of the jurors that found an indictment should be taken by plea, and such plea is in the nature of a plea in abatement;" and in *State* v. *Bradford,* 57 N. H. 188, the majority of the court did not concur in the opinion of Chief Justice CUSHING that persons who had been bound over could not take objections to the sufficiency of the *venires* after the finding of the indictment, but considered and determined the validity of the objections upon a motion to quash. In Rhode Island it has been decided, upon grounds applicable to defendants who have, as well as to those who have not, been bound over, that objections to the qualifications of, or the notice to, a grand juror may be taken by plea in abatement. *State* v. *Davis,* 12 R. I. 492; *State* v. *Mellor,* 13 R. I. 666.

The district attorney further contends that the offense set out in the indictment being a misdemeanor,·the defendant can have but one plea in abatement. There is no doubt that two distinct defenses

cannot be included in one plea in abatement, (*Nauer* v. *Thomas*, 13 Allen, 572; *State* v. *Heselton*, 67 Me. 598;) and it may be that, by the strict rules of the common law, a defendant in any criminal case cannot, as matter of right, file more than one such plea, (1 Chit. Crim. Law, 434, 435.)   But in this country, in cases of misdemeanor as well as of felony, two or more pleas in abatement, not repugnant to one another, have often been allowed to be pleaded together.   *Com.* v. *Long*, 2 Va. Cas. 318; *State* v. *Rickey*, 10 N. J. Law, 83; *State* v. *Greenwood*, 5 Port. (Ala.) 474; *State* v. *Allen*, 1 Ala. 442; *McQuillen* v. *State*, 8 Smedes & M. 587; *Rawls* v. *State*, Id. 599; *Hardin* v. *State*, 22 Ind. 347; *State* v. *Mellor*, 13 R. I. 666; *U. S.* v. *Reeves*, 3 Woods, 199.

In the present case, if it is open to the government, after having demurred or replied to the pleas severally, to object that they were irregularly filed, we are of opinion that the defendant should have leave to file them, and therefore proceed to consider their merits.

The record shows that the grand jurors who found this indictment were drawn and summoned as follows:   The district court issued and delivered to the marshal a writ of *venire facias*, (commonly called the "grand *venire*,") addressed to him, and to be returned by him to the court; and at the same time issued and delivered to the marshal, for distribution, 11 subordinate *venires*, each addressed to either of the constables of a certain town within the district, and to be returned by him to the marshal.   The grand *venire* commanded the marshal to cause to come before the court at the next term, from each town mentioned in the subordinate *venires*, two good and lawful men to serve as grand jurors, and to return with the grand *venire* the names of the persons returned to him by virtue of the subordinate *venires*. Each subordinate *venire* required the constable to notify the inhabitants of the town qualified to vote for representatives, and especially the municipal officers and town clerk, to assemble at least six days before the first day of the term, and be present at the draft of two good and lawful men to serve as grand jurors, and to notify and summon the persons so drawn at least four days before the sitting of the court.   At a town meeting so held two grand jurors were drawn by one of the selectmen.   The subordinate *venire*, with a return showing the notice of a town meeting, the draft of two grand jurors, and notice and summons to them, was returned by the constable to the marshal. The directions in the *venire* to the constable, and the statements in his return, conformed to the provisions of the statutes of the state, (Rev. St. Me. 1883, *c.* 106;) and the marshal made due return to the court of the grand *venire*, and of the names of the grand jurors summoned.

The objection presented by the first and fourth pleas is that the supposed writ of *venire facias* which was served upon two of the grand jurors was addressed to and served by a constable of a town, notwithstanding the provision of section 803 of the Revised Statutes of the

United States that "writs of *venire facias*, when directed by the court, shall issue from the clerk's office, and shall be served and returned by the marshal in person, or by his deputy."

The objection presented under the second plea is that those grand jurors were drawn by a selectman of the town, and not by any officer of the United States.

The objection presented by the third plea is that they were not drawn from a box containing not less than 300 names, placed therein by the clerk of the court and a commissioner appointed by the judge, pursuant to the act of congress of June 30, 1879, c. 52, § 2, (21 St. 43.)

The decision of the questions thus presented depends upon the construction and effect of sections 800, 802, and 803 of the Revised Statutes, and section 2 of the act of June 30, 1879, c. 52, which can be best ascertained by tracing the history of the law upon this subject. It will be convenient, in the first place, to consider how the law stood before the passage of the act of 1879, and then to consider how far that law has been modified by the provisions of this act. The original judiciary act of September 24, 1789, c. 20, § 29, contained these provisions:

"Jurors in all cases, to serve in the courts of the United States, shall be designated by lot or otherwise, in each state respectively, according to the mode of forming juries therein now practiced, so far as the laws of the same shall render such designation practicable by the courts or marshals of the United States; and the jurors shall have the same qualifications as are requisite for jurors, by the laws of the state of which they are citizens, to serve in the highest courts of law of such state; and shall be returned, as there shall be occasion for them, from such parts of the district, from time to time, as the court shall direct, so as shall be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burden the citizens of any part of the district with such services. And writs of *venire facias*, when directed by the court, shall issue from the clerk's office, and shall be served and returned by the marshal in his proper person, or by his deputy, or, in case the marshal or his deputy is not an indifferent person, or is interested in the event of the cause, by such fit person as the court shall specially appoint for that purpose." 1 St. 88.

The leading provision in this section of the act of 1789, as well as the like provision in the act of May 13, 1800, c. 61, (2 St. 82,) had regard only to the state practice at the time of its passage; and for that reason the act of July 20, 1840, c. 47, re-enacted and extended the provision, by including the practice then existing or thereafter introduced in the states, and expressly empowering the courts of the United States to make rules or orders to carry out its object, as follows:

"Jurors to serve in the courts of the United States, in each state respectively, shall have the like qualifications, and be entitled to the like exemptions, as jurors of the highest court of law of such state now have and are entitled to, and shall hereafter, from time to time, have and be entitled to, and shall be designated by ballot, lot, or otherwise, according to the mode of forming such juries now practiced, and hereafter to be practiced, therein, in

so far as such mode may be practicable by the courts of the United States, or the officers thereof; and for this purpose the said courts shall have power to make all necessary rules and regulations for conforming the designation and impaneling of juries, in substance, to the laws and usages now in force in such state; and, further, shall have power, by rule or order, from time to time, to conform the same to any change in these respects which may be hereafter adopted by the legislatures of the respective states for the state courts." 5 St. 394; *U. S.* v. *Stowell*, 2 Curt. 153, 168.

Sections 800, 802, and 803 of the Revised Statutes did but re-enact these provisions of the earlier acts of congress, except that section 800 further provided, in accordance with other previous statutes, that it should not apply to juries to serve in the courts of the United States in Pennsylvania.

These acts of congress, providing that jurors to serve in the courts of the United States, in each state respectively, should be designated by lot or otherwise, according to the mode of forming juries there practiced, so far as such mode might be practicable by the courts or officers of the United States, did not bind the national courts to a rigid adherence to the details of the state practice, but vested in them a large discretion as to the extent to which they might safely and conveniently avail themselves of the services of state officers. This discretion might be exercised either by general standing rule, or by special order in a particular case. *Silsby* v. *Foote*, 14 How. 218; *U. S.* v. *Shackleford*, 18 How. 588. As observed by Mr. Justice IREDELL in a very early case, a *venire* issued with the sanction of the court has the same effect as though the express order of the court had been annexed,—Trials of Fries, (1799,) 44; S. C. Whart. St. Trials, 607;— and a verbal order for the issue of a *venire* is sufficient. NELSON, J., *U. S.* v. *Reed*, 2 Blatchf. 435, 451, 452. The courts of the United States must determine for themselves the number of jurors to be summoned; and might, doubtless, if they saw fit, and as was the settled usage in some circuits, have them summoned, or even drawn, by their own officers only. *U. S.* v. *Dow*, Taney, 34; *U. S.* v. *Reed*, 2 Blatchf. 435, 451, 454; *U. S.* v. *Tallman*, 10 Blatchf. 21, 25; *U. S.* v. *Woodruff*, 4 McLean, 105; *Alston* v. *Manning*, Chase, 460; *U. S.* v. *Collins*, 1 Woods, 499.

But we can have no doubt that it was equally within the power of these courts, conforming more strictly to the statutes and practice of the states respectively in which they were held, to have the jurors drawn by the state authorities; to address only a grand or general *venire* to the marshal, commanding him to cause a certain number of jurors from certain towns to come before the court, and to return this precept, together with a list of the jurors, to the court; and to deliver to him, with the grand *venire*, subordinate *venires*, addressed to constables or other officers of the several towns, to be served upon the municipal authorities, and upon the jurors drawn by them, and returned by such constables or other officers to the court, or to the marshal, to enable him to make up his return upon the grand *venire*.

Under the statutes of Massachusetts and of Maine, petit jurors, since January 1, 1785, and grand jurors, since August 1, 1794, in the courts of those states, have been drawn and summoned as follows: *Venires* for the requisite number of jurors are addressed by the court to the constables of the several towns or cities, and delivered to the sheriff, who distributes them to the constables. The constables notify the inhabitants and the municipal officers, or those officers only, to meet and draw jurors. The jurors are drawn by those officers out of a box containing the names included in a list previously prepared by them, and sometimes revised by the inhabitants in town meeting, or by the common council of a city; and the constables serve the *venires* upon the jurors so drawn, and return the *venires* to the court. Before August 1, 1794, grand jurors were chosen by ballot, in town meeting. 6 Dane, Abr. 227–230; St. Mass. 1784, *cc.* 4, 7; St. Mass. 1793, *c.* 63; St. Mass. 1807, *c.* 140; St. Mass. 1812, *c.* 141; Rev. St. *cc.* 95, 136; Gen. St. *cc.* 132, 171; Pub. St. *cc.* 170, 213; St. Me. Feb. 24, 1821, *c.* 84; Rev. St. 1840, *c.* 135; Rev. St. 1857, 1871, 1883, *c.* 106.

From the first establishment of the circuit and district courts of the United States by the judiciary act of September 24, 1789, *c.* 20, grand and petit jurors to serve in the courts of the United States within the districts of Massachusetts and of Maine have been drawn by the municipal authorities. The only writ of *venire facias* addressed to or served by the marshal has been the grand *venire*, commanding him to cause to come before the court a specified number of grand or petit jurors from particular towns or cities, and to return this precept, with the names of the jurors, to the court; and subordinate *venires*, addressed to the constables of the several towns or cities, have been delivered by the clerk to the marshal, and by him distributed to the constables, commanding each constable to cause the requisite number of grand or petit jurors from his town to be chosen and appointed as the law of the state directs in case of such jurors to serve in its highest court, and also commanding him to notify and summon the jurors so drawn, and to return the subordinate *venire* to the marshal.

In the district of Massachusetts the grand *venire*, from the beginning until now, and the subordinate *venires*, at least since 1842, (when they first began to be kept on file,) have been as just stated, without more specific directions. In the district of Maine—where the subordinate *venires*, as well as the grand *venire*, have been preserved in the district court from 1790, and in the circuit court since its establishment in this district upon the admission of Maine into the Union as a state, in 1820: Acts of March 3 and 30, 1820, *cc.* 19, 27, (3 St. 544, 554)—the two kinds of *venire* were in similar forms from 1795 until 1861. Before that they were to the same effect, although expressing in more detail the requirements of the laws of Massachusetts, of which the district of Maine was then part; and

since 1861 they have been in precisely the same forms as those now before us. The only differences in the forms in use in the districts of New Hampshire and of Rhode Island have been those required to accommodate them to the peculiarities of the state laws. Under the statutes of New Hampshire, as elsewhere in this circuit, the jurors are drawn by municipal officers; but the *venires* are addressed to the clerks of towns, or of wards of cities, and delivered either to those clerks, or to the sheriff, to be distributed to them. Notice in writing to each juror drawn is given either by a constable, or by such a clerk or a selectman; and the *venires* are returned by those clerks to the court. St. N. H. June 17, 1785; Id. Feb. 8, 1791; Id. July 4, 1827, *c.* 42; Rev. St. 1842, *c.* 176; Comp. St. 1853, *c.* 186; Gen. Laws 1878, *c.* 213. In the courts of the United States for the district of New Hampshire the grand *venire*, and the subordinate *venires*, have always been in substantially the same forms as those used in Massachusetts, except that the subordinate *venires* are addressed to town or ward clerks. In Rhode Island the statutes themselves fix the number of jurors to be drawn by the authorities of each town or city for each term of a court of the state. No *venire* or other precept is issued by the court, except when an additional number of jurors is required; but a notification is issued by the municipal authorities to a constable, or like officer, and by him served upon the jurors drawn and returned to the court. Rev. St. R. I. 1798, p. 181; Rev. St. R. I. 1822, p. 136; Rev. St. R. I. 1844, p. 154; Rev. St. R. I. 1857, *c.* 172; Gen. St. 1872, *c.* 187; Pub. St. 1882, *c.* 200. In the courts of the United States for the district of Rhode Island the usage has been to issue only a grand *venire* not substantially varying from the form in use in Massachusetts. The marshal delivers copies of that *venire* to the authorities of each town or city from which he is thereby commanded to cause jurors to be returned. Those copies, with a certificate by those authorities of the drawing of the jurors, and a return by a constable or like officer of his service of the notification upon the jurors drawn, are returned to the court; and the marshal thereupon makes his return upon the grand *venire*.

In short, throughout this circuit, jurors to serve in the courts of the United States, from their first organization, appear to have been drawn by the municipal authorities in accordance with the laws of the several states, and to have been summoned by constables or other town officers only; and no *venire* has been directed to the marshal, except the grand or general *venire*, commanding him to cause the requisite number of jurors from the towns or cities named therein to be returned to the court. This contemporaneous practice, continued without interruption for nearly a century, is of itself of great weight in the interpretation of the act of congress of 1879, and of the re-enactments of it. *Stuart* v. *Laird*, 1 Cranch, 299, 309; *Surgett* v. *Lapice*, 8 How. 48, 68. But the matter does not rest there. The practice prevailing in this circuit has been clearly recog-

nized and affirmed by other acts of congress, and by decisions of our predecessors.

The act of May 8, 1792, c. 36, § 3, provided that the marshal should receive as fees "for summoning a grand or petit jury, each, three dollars: provided, that in those states where jurors, by the laws of the state, are drawn by constables or other officers of corporate towns or places, by lot, the marshals shall receive for the use of such constables or officers the fees allowed for summoning juries." 1 St. 276.

The act of February 28, 1799, c. 80, § 1, provided that the marshal should receive as fees, "for summoning each grand and other jury, four dollars: provided, that in no case shall the fees for summoning jurors to any one court exceed fifty dollars; and in those states where jurors, by the laws of the state, are drawn by constables or other officers of corporate towns or places, by lot, the marshal shall receive, for the use of the officers employed in summoning the jurors and returning the *venire*, the sum of two dollars, and, for his own trouble in distributing the *venire*, the sum of two dollars." 1 St. 624,

In 1838 the circuit court for the district of New Hampshire held that the marshal of that district was entitled to a fee of two dollars for the service of a subordinate *venire* on the town clerk of each town from which the marshal was required by the grand *venire* to cause the grand and petit jurymen to be drawn. Mr. Justice STORY, delivering judgment, after quoting the passage above cited from the act of 1799, said:

"Now, the latter part of this proviso applies directly to the mode of drawing jurors in the district of New Hampshire, according to the state laws, which have been adopted by the act of congress of the thirteenth of May, 1800, c. 61. By the state laws jurors are to be drawn from the jury-boxes of the town by a lot, at a meeting to be called for that purpose, in the presence of the official functionaries of the town. The respective *venires* for jurors from each town are to be served on the town clerk; and, by the practice of the courts of the United States, a grand or general *venire* is addressed to the marshal to serve the proper subordinate *venires* on the respective clerks of the towns. The item now claimed by the defendant, and controverted by the United States, is for the service of these *venires* on the town clerks. Upon this statement, it seems difficult to find any real ground for controversy. The statute seems to us to provide directly for the very case, and therefore we are of opinion that the claim ought to be allowed." *U. S.* v. *Cogswell,* 3 Sum. 204, 207.

In a similar case in the circuit court for the district of Maine, in 1846, in which, according to the practice in this district, the grand *venire* only was executed by the marshal, and the jurors were summoned by constables of towns, Mr. Justice WOODBURY, following Mr. Justice STORY's decision, held that the marshal should be allowed two dollars for distributing each *sub venire*, provided that the aggregate of the fees for summoning jurors at any one term, including two dollars for a constable for the service of each *sub venire*, did not exceed

fifty dollars; and further held that the marshal should be allowed no fees for travel; because, as he said, "*distributing* the *venires* is contemplated by the act to be a different duty from *serving* them, as the former is called by a different name, and done by a different officer, in cases like this,—that is, by the marshal,—while the service is usually by a constable." *U. S.* v. *Smith,* 1 Wood. & M. 184, 191.

By the corresponding provision in the subsequent act of February 28, 1853, *c.* 80, § 1, it was enacted that the marshal should receive, "for serving *venires*, and summoning every twelve men as grand or petit jurors, four dollars, or thirty-three and one third cents each; and in those states where jurors, by the laws of the state, are drawn by constables or other officers of corporate towns or places, by lot, the marshal shall receive, for the use of the officers employed in drawing and summoning the jurors, and returning each, *venire*, two dollars, and, for his own trouble in distributing the *venires*, two dollars for each jury: provided, that in no case shall the fees for distributing and serving *venires*, and drawing and summoning jurors by township officers, including mileage chargeable by the marshal for such service, at any court, exceed fifty dollars." 10 St. 164. And the provision is re-enacted in substantially the same words in section 829 of the Revised Statutes.

Under the provisions of the Revised Statutes, therefore, it is quite clear that jurors to serve in the courts of the United States might lawfully be drawn by the state authorities, and summoned by a town constable only, and that it was not necessary that the grand *venire* should be served upon the jurors by the marshal or his deputy; and consequently the grand jurors in this case were lawfully drawn, summoned, and returned, unless congress, by the act of June 30, 1879, *c.* 52, § 2, has made a change in the law in this respect. But this act expressly repeals only that clause of section 800 of the Revised Statutes which relates to Pennsylvania, and other sections of those statutes not material to the present inquiry; and, after providing that all jurors, grand and petit, shall be publicly drawn from a box containing the names of not less than 300 persons, possessing the qualifications prescribed in section 800 of the Revised Statutes, which names shall have been placed therein by the clerk of the court and a commissioner appointed by the judge, further provides as follows:

"But nothing herein contained shall be construed to prevent any judge from ordering the names of jurors to be drawn from the boxes used by the state authorities in selecting jurors in the highest courts of the state; and no person shall serve as a petit juror more than one term in any one year; and all juries to serve in courts after the passage of this act shall be drawn in conformity herewith." 21 St. 43.

This statute thus provides two alternative methods of drawing jurors to serve in a court of the United States: the one, by drawing from a box provided for the purpose, containing names put in by the

clerk and a commissioner of the court; the other, if the judge so orders, by drawing "from the boxes used by the state authorities in selecting jurors in the highest courts of the state." If the second method is adopted, as this act contains no further provision regulating the mode of drawing, or of summoning and returning, grand jurors, these matters must still be regulated by the unrepealed provisions of the Revised Statutes. The adoption of the second method in the district court of the United States for this district is shown, not only by the *venires* issued by order of the court to the marshal, and to constables of towns, in the same forms which were in use before the passage of the act of 1879, but also by a formal order, made and signed by the district judge, and entered of record in the district court, on January 18, 1884, in these words:

"Ordered that, until otherwise directed, the names of grand and petit jurors to be summoned to serve at any term of the district court of the United States in this district be drawn from the boxes used by the state authorities, in pursuance of the statutes of Maine, in selecting jurors in the supreme judicial court of the state; and that the clerk issue *venires* for jurors as heretofore practiced."

From these considerations, it results that neither of the first four pleas presents any legal defense.

Under the fifth plea, the objection relied on is that the notice of the town meeting for drawing jurors was posted only three days, instead of four, as required by the constable's *venire* and the statutes of the state. Rev. St. Me. *c.* 106, § 9. But the meeting having been held and the draft had within the time prescribed, namely, six days before the session of the court, the defect in the notice of the meeting does not affect the validity of the indictment. *State* v. *Smith*, 67 Me. 328, 335; *Ferris* v. *People*, 35 N. Y. 125, 129.

The sixth plea was waived at the argument.

Pleas adjudged bad; defendant to answer over.